SILBERMAN, Judge.
Lance M. McKinney, an attorney who represented the ward in a guardianship proceeding, seeks review of the final order awarding him a reduced amount of attorney’s fees and charging him with costs. We reverse because the trial court’s finding that McKinney’s services did not benefit the Ward is not supported by competent, substantial evidence.
In May 2011, Gregory R. Rawl filed a petition for appointment of guardian based on the alleged incapacity of his mother, Carol Padlina Rawl (the Ward). The trial court appointed attorney Amy McGarry to represent the Ward, and attorney McKinney filed a notice of appearance as co-counsel for the Ward.[1] The court also appointed Mr. Rawl as the temporary emergency guardian of the property of the Ward. The proceedings became contentious when objections to Mr. Rawl’s petition for appointment of guardian and competing petitions for appointment of guardian were filed.
Meanwhile, the trial court appointed a three-person committee to examine the Ward and file reports to assess the Ward’s capacity to exercise certain rights.[2] The committee members submitted their reports in June 2011. The first report was submitted by Karen Lee, a nurse who concluded that the Ward lacked all capacity and was in need of a plenary guardianship.[3] The second report was submitted by Dr. Oakes-Lottridge, a medical doctor who also recommended a plenary guardianship. However, on the portion of the assessment form where a “yes” or “no” answer must be circled as to the Ward’s various capacities, Dr. Oakes-Lottridge circled both and noted that the Ward’s capacity varied depending upon the time of day. The third report was submitted by Dr. Spellman, a - psychologist who found that the Ward lacked capacity in most areas but nonetheless recommended a limited guardianship.
Days before the September 2011 capacity hearing date, McKinney filed a reas *1181 sessment report prepared by committee member Karen Lee. This reassessment was performed at the request of attorney McKinney’s law firm. In the reassessment report, Lee changed her recommendation from a plenary guardianship to a limited guardianship.
At the capacity hearing, the attorneys pointed out the internal inconsistencies in the reports of committee members Oakes-Lottridge and Spellman. When the discussion turned to Lee’s report, Mr. Rawl argued the reassessment report should be stricken because it was not obtained in compliance with the statutory procedures providing for examinations by committee members set forth in section 744.331(3), Florida Statutes (2010). Attorney McKinney argued that section 744.331(3) did not prohibit the Ward’s attorney from contacting the examining committee members or obtaining a reassessment. McKinney asserted that he had not discussed the content of Lee’s first report with her but simply had a staff member call and ask Lee to reassess the Ward. McKinney claimed that the reassessment report was actually the best evidence of the Ward’s present condition because it was more recent than any of the original reports.
The court concluded that it was “inappropriate” for McKinney to contact an examining committee member to obtain a reassessment. The court determined that it was similarly inappropriate for McKinney to file a reassessment report containing a changed recommendation without sufficient notice. As a result, the court struck the reassessment report.
However, the court did not proceed to determine the Ward’s competency based on the committee’s three original reports. Instead, the court appointed another examining committee to evaluate the Ward and continued the capacity hearing until those reports were available. Although the court struck Lee’s reassessment report, the court was troubled by the fact that Lee’s recommendation had changed since the original assessment. The court also noted the inconsistencies in Dr. Oakes-Lottridge’s report and stated that it needed more current information regarding the Ward’s capacity.
The second examining committee reported that the Ward was totally incapacitated and recommended a plenary guardianship. After the continued capacity hearing, the court adjudicated the Ward totally incapacitated and concluded that a plenary guardianship was necessary. The court appointed Mr. Rawl as guardian of the property and a professional guardian as guardian of the person.
Attorneys McGarry and McKinney thereafter filed a joint petition for attorney’s fees and expenses to which Mr. Rawl objected. Among other things, Mr. Rawl argued that McKinney was not entitled to any fees associated with the second committee’s examinations “since the second examining committee was appointed due to inappropriate tampering with the examining committee of court appointed counsel.” [4]
The court held an evidentiary hearing on the joint petition. Stephen Buckley, an attorney with forty-three years of experience in guardianship matters, testified as an expert for McKinney. The expert stated that, apart from a minor billing error, McKinney’s attorney and paralegal fees were both reasonable in hourly rate and in number of hours spent. When asked about the reassessment, the expert said he did not believe McKinney obtained the reassessment report with the intention of *1182 having a second committee appointed. Instead, the expert explained McKinney had legitimate doubts about the accuracy of Lee’s original assessment based on the circumstances under which the Ward was examined. The expert believed that it benefitted the Ward to have a second committee appointed because of the inconsistencies in the original reports and the Ward’s intervening decline in capacity.[5]
McKinney’s paralegal provided unrefot-ed testimony regarding how the reassessment came about. According to the paralegal, the Ward called McKinney’s office after she saw Lee’s report and asked if Lee could return for a “do-over.” The Ward indicated she had not been at her best when Lee examined her because she had some friction with her son the night before Lee’s examination and she had not slept well. The paralegal spoke with McKinney, and he asked her to see if Lee would return and conduct a morning examination. The paralegal did so, and Lee then contacted the Ward to schedule the appointment.
The trial court ruled that McKinney’s hourly rate and number of hours were reasonable. But the court decided that the reassessment delayed the proceedings and cost the Ward additional money. The court did not believe that McKinney procured the reassessment in bad faith but found it “inappropriate.” The court noted that there was no evidence that McKinney’s office provided any information to Lee, but the court suggested that McKinney should have moved to strike Lee’s report and brought the issue before the court rather than contacting the examining committee member directly.[6]
The court considered disallowing all of the fees related to the appointment of the second examining committee but declined to do so. The court appeared to recognize that there were other reasons it appointed the second committee. The court acknowledged that, due to their internal inconsistencies, the reports of the other two members of the first examining committee “would have been very difficult to work with.” And the court admitted it probably would have ordered a reassessment anyway due to the Ward’s intervening decline in capacity.
Without explanation, the court decided to reduce McKinney’s attorney’s fees by $3,766.25, or half of the total fees McKinney incurred related to the appointment of the second examining committee. The court stated at one point that the disallowed amount was not of benefit to the Ward,[7] although the court’s comments suggest that the reduction was made as a sanction. The court also imposed the total $900 cost of the appointment of the second examining committee against McKinney. The court stated that even though a reassessment was probably needed “at some point anyway,” it was reducing McKinney’s fees by that additional $900. This, too, appears to have been a sanction. In its written order, the court ruled that these fees “were not proven to be for the benefit of the [W]ard.” As for the costs, the court ruled that the “effort to obtain a re-examination was not permissible” and resulted *1183 in the striking of the original examining committee reports.
On appeal, McKinney argues that the trial court abused its discretion in reducing his fee award and charging him for costs based on conduct that is not prohibited by law and which did not form the sole basis for the court’s appointment of the second examining committee. McKinney contends that he was entitled to all of his fees pursuant to section 744.108 because he established that all of his services benefited the Ward.
Section 744.108(1) provides that “an attorney who has rendered services to the ward or to the guardian on the ward’s behalf, is entitled to a reasonable fee for services rendered and reimbursement for costs incurred on behalf of the ward.” An award of fees and costs under this section is subject to the requirement that the attorney’s services must benefit the ward or the ward’s estate. Thorpe v. Myers, 67 So.3d 338, 345 (Fla. 2d DCA 2011). The attorney seeking fees under this statute bears the burden of proving that his or her services benefitted the ward or the ward’s estate. Ansley, 94 So.3d at 714.
To the extent that attorney’s fees for the ward’s services involved unproductive litigation in pursuit of goals that did not benefit the Ward, the trial court has the discretion to reduce the fee award by the fees attributed to those pursuits. Thorpe, 67 So.3d at 345-46. A fee award that is reduced based on services that do not benefit the ward will be upheld on appeal if there is competent, substantial evidence to support it. Ansley, 94 So.3d at 714; Thorpe, 67 So.3d at 341.
We conclude that the trial court’s finding that $3,766.25 of McKinney’s fees were not for the Ward’s benefit is not supported by competent, substantial evidence. McKinney provided unrebutted testimony that he obtained the reassessment at the Ward’s request because the Ward believed the accuracy of the examination was affected by her emotional state. Certainly, under the circumstances described by the testimony, the act of seeking a reassessment pursuant to the Ward’s request, based on concerns about the accuracy of the report, would seem to be a benefit to the Ward. And as noted previously, the court itself commented regarding the inconsistencies in and problems with the original reports.
The more difficult question is whether the benefit to the Ward was negated by the method in which McKinney obtained the reassessment. The trial court determined that it was inappropriate for McKinney’s office to contact an examining committee member to request a reassessment. But section 744.331 does not specifically prohibit the Ward’s attorney from contacting an examining committee member to request a reassessment. Further, the trial court declined to find that McKinney acted in bad faith in so doing. That said, it is arguable that the reassessment did not benefit the Ward because the court struck the reassessment report based, at least in part, on the court’s view that McKinney’s conduct was inappropriate.
It is also arguable that the court could have simply stricken Lee’s reassessment report and charged McKinney with the fees and costs associated with that report. But instead, the court struck all three reports and appointed a new committee. The evidence does not support a finding that this was attributable to any misconduct by McKinney. Rather, it appeared to result from the trial court’s concern with the accuracy of the original committee members’ reports both due to internal inconsistencies and the Ward’s intervening decline in capacity. To the extent that *1184 McKinney’s actions brought the problems with the original committee’s reports to the court’s attention, these actions benefit-ted the Ward.
In fact, McKinney’s expert testified that the appointment of the second committee benefitted the Ward. The expert asserted that the concerns about the quality of the first committee’s reports and the Ward’s intervening decline in capacity were legitimate. It would only benefit the Ward for the court to consider the most accurate information available to the court prior to its capacity determination.
We recognize, as did the trial court, that McKinney could have avoided this outcome if he had moved to strike Lee’s original report and brought the issue before the court rather than contacting Lee. And we do not condone or recommend McKinney’s actions. But it is worth noting that, had McKinney brought his concerns about the original assessment reports to the court’s attention in the manner suggested by the court, the Ward would have still incurred additional fees because of the problems with those reports. Lee may well have been authorized by the court to conduct a reassessment, and the court would have had the same information before it as to the problems with the original reports that caused it to strike the original panel and reports.
In summary, we understand the court’s concerns as to McKinney procuring Lee’s reassessment. But we conclude that the trial court’s finding that $8,766.25 of McKinney’s fees did not benefit the Ward is not supported by competent, substantial evidence. Similarly, the evidence and the court’s findings and observations regarding the problems with the original reports do not support sanctioning McKinney by reducing his fees by half or by charging him the $900 in costs. As stated above, McKinney’s actions in obtaining the reassessment were not clearly prohibited by law, and the court found that McKinney did not act in bad faith.
We therefore reverse the final order awarding McKinney a reduced amount of attorney’s fees and charging him with the costs of the second examining committee. On remand, the trial court shall reconsider McKinney’s petition for attorney’s fees and expenses. To the extent the court again determines that any reduction is warranted for services that did not benefit the Ward, the trial court must make findings as to the time entries or costs being disallowed and the basis for the reduction.
Reversed and remanded.
NORTHCUTT and SLEET, JJ., Concur.

.The record does not reflect the circumstances under which McKinney became co-counsel for the Ward. We decline to address Mr. Rawl's appellate argument that McKinney was not entitled to any fees because he was not court-appointed and the court did not enter an order allowing him to appear as co-counsel. Mr. Rawl waived this argument by failing to raise it in the trial court. Indeed, his trial counsel acknowledged that McKinney was entitled to fees.

. See § 744.33l(3)(e), Florida Statutes (2010). Those rights include the right to marry, vote, apply for government benefits, have a driver’s license, travel, seek or retain employment, contract, sue and defend lawsuits, manage property or make any gift or disposition thereof, determine his or her residence, consent to medical and mental health treatment, and make social decisions. § 744.3215(2), (3).

. In a plenary guardianship, the guardian exercises all of the delegable rights and powers of the Ward. § 744.102(9)(b).

. We find no merit in Mr. Rawl’s assertion that affirmance is required based on his other objections to McKinney’s petition for attorney’s fees and expenses.

. The trial court asked questions of the expert and observed that the first examining committee members' reports "were all over the place,” while the reports from the second committee were consistent.

. Indeed, the court’s suggested procedure has been recognized as an appropriate method of challenging the sufficiency of a committee member’s assessment. See Levine v. Levine, 4 So.3d 730, 731 n. 1 (Fla. 5th DCA 2009).

. See § 744.108(1); In re Guardianship of Ansley, 94 So.3d 711, 714 (Fla. 2d DCA 2012).